IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANKLYN WILLIAMS, | ) | Case No. 1:21-cv-01301-BYP |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATE DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| OHIO DEPARTMENT OF | ) | JENNIFER DOWDELL |
| REHABILITATION AND | ) | ARMSTRONG |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Franklyn Williams ("Mr. Williams"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Williams is serving a 33-year sentence for: (1) two first-degree felony counts of aggravated robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.01(A)(1), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (2) two second-degree felony counts of robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.02(A)(2), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (3) two first-degree felony counts of kidnapping with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2905.01(A)(2), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (4) two third-degree felony counts of having weapons while under disability in violation of R.C. § 2923.13(A)(2), one of which included two firearm specifications under R.C. §§ 2941.141(A)

and 2941.145(A); (5) two fifth-degree felony counts of theft in violation of R.C. § 2913.02(A)(1); (6) one fifth-degree felony count of theft with two firearm specifications in violation of R.C. §§ 2913.02(A)(4), 2941.141(A), and 2941.145(A); (6) one fifth-degree felony count of misuse of credit cards in violation of R.C. § 2913.21(B)(2); (7) one first-degree misdemeanor count of misuse of credit cards in violation of R.C. § 2913.21(B)(2); (8) one first-degree misdemeanor count of petty theft in violation of R.C. § 2913.02(A)(1); and (9) one misdemeanor count of failure to comply with order/signal of police officer in violation of R.C. § 2921.331(B).

Mr. Williams asserts three grounds for relief. Respondent, the Ohio Department of Rehabilitation and Corrections (the "Department"), filed an answer/return of writ on February 17, 2022. (ECF No. 10). Mr. Williams filed a traverse on August 30, 2022. (ECF No. 16).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Williams' petition and other case-dispositive motions. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Williams' petition be DISMISSED and/or DENIED. I further recommend that this Court not grant Mr. Williams a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

2

{¶2} In 2015, Williams was indicted in four separate cases. In Cuyahoga C.P. No. CR-15-593764-A, he was charged with aggravated robbery, robbery, kidnapping, and having weapons while under disability, all with one- and three-year firearm specifications. The aggravated robbery, robbery, and kidnapping charges each contained notices of prior conviction and repeat violent offender specifications.

{¶3} In Cuyahoga C.P. No. CR-15-593844-A, Williams was charged with aggravated robbery, robbery, kidnapping, two counts of theft, and misuse of a credit card. The aggravated robbery, robbery, and kidnapping charges contained one- and three-year firearm specifications, notices of prior conviction, and repeat violent offender specifications.

{¶4} In Cuyahoga C.P. No. CR-15-593998-A, Williams was charged with aggravated robbery, two counts of theft, misuse of credit cards, and having weapons while under disability. The aggravated robbery charge contained one- and three-year firearm specifications, notice of prior conviction and repeat violent offender specifications, and one theft charge contained one- and three-year firearm specifications.

{¶5} In Cuyahoga C.P. No. CR-15-594806-A, Williams was charged with failure to comply and drug possession.

{¶6} The four cases were consolidated and initially proceeded to a jury trial in January 2016. On the second day of trial, Williams entered into a plea agreement with the state. Under the terms of the plea agreement, Williams and the state agreed to a sentence of 14 years in prison and the trial court imposed the agreed upon sentence.

{¶7} Williams appealed, claiming that his plea was not knowingly, voluntarily, and intelligently made, he had received ineffective assistance of counsel, and the trial court erred in failing to hold a hearing on his motion to withdraw his guilty pleas. *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 1. This court found that the trial court did not substantially comply with its duty to inform Williams of "the maximum penalty involved" under Crim.R. 11 because Williams received inaccurate information about judicial release during his plea hearing. *Id*. at ¶ 22. This court concluded that but for the erroneous information Williams would not have entered the guilty plea, reversed his conviction and sentence, and remanded the case. Id. at ¶ 22, 25.

{¶8} The record reflects that after the case was remanded the state offered Williams the same plea and agreed sentence of 14 years. Williams rejected the state's offer. Upon Williams's motion, the trial court recused itself and the case was transferred to another trial judge. The matter proceeded to a second jury trial in December 2017; the notices of prior conviction, repeat violent offender specifications, and having weapons while under disability counts were tried to the bench.

**December 2017 Trial**

**Smiley robbery**

{¶9} 78-year old W. Smiley ("Smiley") testified that on December 8, 2014, he was getting out of his car at his doctor's office, located in Euclid. Smiley testified that a car pulled up next to him and blocked his way. A man, later identified as Williams, got out of his car and asked Smiley if he had change for a five dollar bill. Smiley said he did not. The man was holding a gun, told Smiley to give him his wallet, and took Smiley's wallet and cell phone.

{¶10} Williams attempted to use Smiley's credit card to purchase liquor at two stores the same day. The owner of Collinwood Liquor Store testified that he was working the cash register when a man entered the store wearing a black jacket and black pants and tried to buy a couple bottles of liquor, but the man could not get the debit feature of the credit card he was using to work. The owner viewed a photo array and identified Williams with "80 percent" certainty.

{¶11} The owner of the Marathon gas station located on East 152nd Street in Cleveland testified that a man wearing a vest and dark pants that had white stripes running down the side walked from a light-colored Lexus SUV towards the store. The owner authenticated a receipt from the store, which showed a purchase for $24.90 made with Smiley's credit card. A still shot of the surveillance footage entered into evidence showed Williams wearing a green shirt, black hat, puffy vest, and dark pants with white stripes running down the side.

{¶12} Euclid Police Detective Michael Caruso ("Detective Caruso") investigated the robbery. After Williams was arrested in February 2015, Detective Caruso interviewed Williams, who admitted to being involved in the Smiley robbery. Williams downplayed his involvement, claiming that someone else held up Smiley. According to Williams, he was the driver and used Smiley's credit card to "get gas."

{¶13} During trial, Smiley, who had been subpoenaed to testify, was sitting in the courthouse lobby with his daughter. Smiley and his daughter testified that Williams approached them in the lobby, introduced himself, put out his hand to shake Smiley's hand, and said to Smiley, "I'm sorry I did this." Smiley's daughter told Williams they should not talk to him and Williams walked away.

**Watkins robbery**

{¶14} A week after the Smiley robbery, on December 14, 2014, D. Watkins ("Watkins") was leaving Loganberry Apartments in Richmond Heights when a man pointed a .38 caliber revolver at him and robbed him of his wallet, cellphone, and keys. Watkins called 911 and told dispatchers that the man who robbed him was driving a "cream-colored Lexus SUV," wearing a "black beanie" and had a "mustache that turned into a beard." The 911 call was made at approximately 1:43 a.m.

{¶15} Detective Charles Duffy ("Detective Duffy") of the Richmond Heights Police Department investigated the robbery. He viewed surveillance video from the Marathon gas station on East 152nd Street in Cleveland. The video showed a man, later identified as Williams, walking into the store at 2:00 a.m., less than 20 minutes after Watkins called 911, wearing a black hat, dark vest, and dark pants with white stripes running down the side. Williams used Watkins's credit card at the store.

{¶16} Detective Duffy compiled a photo array that included Williams. Another officer in the department showed it to Watkins. Watkins made a selection from the photo array and, according to Detective Duffy, the department was able to proceed in its investigation based on Watkins's selection.

{¶17} Watkins did not appear to testify at the December 2017 trial. Watkins's mother testified that her son did not want to testify, and she did not know his whereabouts.

{¶18} Yolanda Jackson ("Jackson") testified that she was dating Williams in December 2014. At that time, Jackson owned an off-white Lexus SUV. She testified that Williams had access to the vehicle and drove it in December 2014. The only other person who drove the car was an aunt. Detective Duffy interviewed Jackson and her daughter, both of whom identified Williams from the December 14th surveillance footage at the Marathon gas station.

**Wooten robbery**

{¶19} The next day, December 15, 2014, local business owner D. Wooten ("Wooten") was on his way to the bank when he stopped at the Convenient Food Mart on Babbitt Road in Euclid. As Wooten exited the store to return to his vehicle, a man got out of a light-colored Lexus SUV and pointed a .38 caliber gun at him. The man demanded, "You know what this is, give it up!" Wooten handed over a rubber-banded roll of cash, which consisted of thousands of dollars of cash.

{¶20} After the robbery, Wooten viewed surveillance footage from inside of the convenience store and positively identified a man in the store wearing a black hat and puffy vest as the man who had robbed him. Wooten was "100 percent" sure about his identification. Wooten subsequently viewed a photo array at the police department and was "80 percent" sure about his identification.

{¶21} An eyewitness to the robbery, M. Williams, was outside of the store when she heard a commotion and saw Wooten, whom she knew because she worked for him, with his hands in the air. She saw a man standing in front of Wooten wearing a "skull cap" and puffy vest. M. Williams saw the man get into a light-colored Lexus SUV and drive away. She noted a partial license plate number and gave the number to police.

{¶22} About a week later, Wooten saw the same Lexus outside of one of the bars he owned and realized that Williams's girlfriend "frequented" his establishment. Wooten called police, who later confirmed that the SUV belonged to Williams's girlfriend, Jackson.

{¶23} The owner of the Convenient Food Mart testified to the authenticity of the video footage from his store. In the video footage, which was entered into evidence and played for the jury, Williams can be seen standing in line behind Wooten and wearing a dark puffy vest, black hat, and dark pants with white stripes running down the sides.

{¶24} When Detective Caruso interviewed Williams about the robbery, Williams told the detective, "I don't know why he [Wooten] called you [the police] because I didn't get anything." Williams insisted that he was with another man whom he initially thought took the money, but later thought Wooten recovered his money because neither he nor the man he was with ended up with the rubber-banded roll of money.

{¶25} Williams also admitted to the detective that he used to have a black .38 caliber revolver but claimed that he no longer possessed it and did not know what happened to the handgun.

**Failure to comply**

{¶26} Lieutenant Neil Laughlin ("Lieutenant Laughlin") of the Ohio State Highway Patrol testified that on February 15, 2015, he was patrolling a local Cleveland street. Lieutenant Laughlin observed a Dodge Charger make a signal violation. The officer initiated a traffic stop and the suspect car pulled over. When Lieutenant Laughlin got out of his cruiser to approach the vehicle, the car sped off.

{¶27} The lieutenant testified that the following occurred:

> I reentered my cruiser and a lengthy vehicle pursuit took place. During the course of that pursuit, there was a multitude of traffic violations committed, approximately 30 stop signs were run, 13 to 20 red lights were run, passed multiple vehicles. Top speed was around 90 miles an hour.

> At the end of the pursuit, the driver decided to jump out of the driver's door while the vehicle was still moving, so the vehicle drifted off into a yard. I pursued the driver on foot.

{¶28} The officer eventually caught the driver, who happened to be wearing a black puffy vest and black athletic pants with three white stripes running down the side. The police seized marijuana and codeine pills and identified the driver as Williams. The officer arrested Williams on multiple warrants.

{¶29} Lieutenant Laughlin identified Williams in court. The lieutenant's dash cam video was played in court for the jury and entered into evidence.

(ECF No. 10-2, Exhibit 60); *State v. Williams*, No. 108275, 2020 WL 479384, 2020-Ohio-269 (8th Dist. Jan. 30, 2020).

### III.  PROCEDURAL HISTORY

#### A.  <u>State Court Plea</u>

On March 5, 2015, Mr. Williams was indicted in the Cuyahoga County Court of Common Pleas in case number CR-15-593764 on the following offenses: (1) one first-degree felony count of aggravated robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.01(A)(1), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (2) one second-degree count of robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.02(A)(2), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (3) one first-degree felony count of kidnapping with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2905.01(A)(2), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); and (4) one third-degree felony count of having weapons under disability with two firearm specifications in violation of R.C. §§ 2923.13(A)(2), 2941.141(A), and 2941.145(A). (ECF No. 10-2, Exhibit 1). On March 10, 2015, Mr. Williams pled not guilty to all charges. (ECF No. 10-2, Exhibit 2).

On March 17, 2015, Mr. Williams was indicted in the Cuyahoga County Court of Common Pleas in case number CR-15-593844 on the following offenses: (1) one first-degree felony count of aggravated robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.01(A)(1), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (2) one second-degree felony count of robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§

2911.02(A)(1), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (3) one first-degree felony count of kidnapping with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2905.01(A)(2), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (4) two fifth-degree felony counts of theft in violation of R.C. § 2913.02(A)(1); and (5) one fifth-degree felony count of misuse of credit cards in violation of R.C. § 2913.21(B)(2). (ECF No. 10-2, Exhibit 6). On March 20, 2015, Mr. Williams pled not guilty to all charges. (ECF No. 10-2, Exhibit 7).

On April 1, 2015, Mr. Williams was indicted in the Cuyahoga County Court of Common Pleas in case number CR-15-593998 on the following offenses: (1) one first-degree felony count of aggravated robbery with two firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification in violation of R.C. §§ 2911.01(A)(1), 2941.141(A), 2941.145(A), 2929.13(F)(6), and 2941.149(A); (2) one fifth-degree felony count of theft with two firearm specifications in violation of R.C. §§ 2913.02(A)(4), 2941.141(A), and 2941.145(A); (3) one first-degree misdemeanor count of misuse of credit cards in violation of R.C. § 2913.21(B)(2); (4) one first-degree misdemeanor count of petty theft in violation of R.C. § 2913.02(A)(1); and (5) one third-degree felony count of having weapons under disability in violation of R.C. § 2923.13(A)(2). (ECF No. 10-2, Exhibit 9). On April 6, 2015, Mr. Williams pled not guilty to all charges. (ECF No. 10-2, Exhibit 10).

On April 14, 2015, Mr. Williams was indicted in the Cuyahoga County Court of Common Pleas in case number CR-15-594806 on the following offenses: (1) one third-degree felony count of failure to comply in violation of R.C. § 2921.331(B); and (2) one fifth-degree

felony count of drug possession in violation of R.C. § 2925.11(A). (ECF No. 10-2, Exhibit 12). On April 17, 2015, Mr. Williams pled not guilty to all charges. (ECF No. 10-2, Exhibit 13).

On July 23, 2015, the State filed a motion to join the four indictments. (ECF No. 10-2, Exhibit 15). On November 3, 2015, the trial court granted the State's motion. (ECF No. 10-2, Exhibit 16). On January 4, 2016, Mr. Williams waived his right to a jury trial with respect to the notice of prior conviction and repeat violent offender specifications, as well as the having weapons while under disability charges. (ECF No. 10-2, Exhibit 17).

On January 5, 2016, after the beginning of trial, Mr. Williams entered a guilty plea in all four cases. (ECF No. 10-2, Exhibits 18-21). In connection with the plea in case number CR-15-593764, the indictment was amended to delete the one-year firearm specification, the notice of prior conviction specification, and the repeat violent offender specification from Count Two (robbery) and the one-year firearm specification from Count Four (having weapons while under disability). (ECF No. 10-2, Exhibit 18). Mr. Williams then pled guilty to Counts Two and Four, while Counts One (aggravated robbery) and Three (kidnapping) were nolled. *Id.*

In connection with the plea in case number CR-15-593844, the indictment was amended to delete the one-year firearm specification, the notice of prior conviction specification, and the repeat violent offender specification from Count Two (robbery). (ECF No. 10-2, Exhibit 19). Mr. Williams then pled guilty to Counts Two and Four (theft), while Counts One (aggravated robbery), Three (kidnapping), and Five (theft) were nolled.  *Id.*

In connection with the plea in case number CR-15-593988, the indictment was amended as follows: (1) Count One (aggravated robbery), was reduced to a second-degree

felony count of robbery with a three-year firearm specification; (2) the one-year firearm specification, notice of prior conviction specification, and repeat violent offender specification were deleted from Count One; and (3) Count Two of the indictment (theft) was amended by deleting the one-year and three-year firearm specifications. (ECF No. 10-2, Exhibit 20). Mr. Williams then pled guilty to Counts One, Two, and Five (having weapons while under disability), while Counts Three (misuse of credit cards) and Four (petty theft) were nolled. *Id*.

In connection with the plea in case number CR-15-594806, Mr. Williams pled guilty to Count One (failure to comply with order/signal of police officer), while Count Two (drug possession) was nolled. (ECF No. 10-2, Exhibit 21).

Also on January 5, 2016, and in connection with Mr. Williams' guilty pleas, the trial court sentenced Mr. Williams to a total of 14 years, a sentence the parties had agreed to as part of the plea. (ECF No. 10-2, Exhibits 18-21).

### B.  Direct Appeal

On February 3, 2016, Mr. Williams, acting *pro se*, filed a notice of appeal to the Eighth District Court of Appeals in case numbers CR-15-593844, CR-15-593998, and CR-15-593764. (ECF No. 10-2, Exhibit 22). On August 17, 2016, Mr. Williams, through counsel, filed a notice of appeal in Case Number CR-15-594806. (ECF No. 10-2, Exhibit 23). Mr. Williams also filed a motion for delayed appeal, arguing that he had inadvertently failed to include case number CR-15-594806 in his initial notice of appeal. (ECF No. 10-2, Exhibit 24). On August 23, 2016, the Eighth Appellate District consolidated Mr. Williams' appeals. (ECF No. 10-2, Exhibit 26).

On September 12, 2016 Mr. Williams, through counsel, filed his appellate brief, raising the following assignments of error:

1. Defendant-Appellant's plea was not voluntary, knowing or intelligent because he was given inaccurate information about judicial release and received ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution relating to information conveyed regarding judicial release.

2. Mr. Williams received ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution, which invalidated the knowing, intelligent, and voluntary nature of his plea, due to the failure of counsel to follow up on the Motion to Suppress statements that Mr. Williams had made to police.

3. Trial court erred in not holding a hearing on Defendant's post-sentence Motion to Withdraw Guilty Plea.

(ECF 10-2, Exhibit 27).

On May 4. 2017, the Eighth Appellate District vacated Mr. Williams' sentence and remanded the case to the trial court for further proceedings, holding that the trial court provided Mr. Williams with inaccurate information regarding when he would be eligible for judicial release. (ECF No. 10-2, Exhibit 30).

## C.  **Trial and Conviction Following Remand**

On August 25, 2017, after the case was remanded from the Eighth Appellate District, Mr. Williams, through counsel, filed a motion to dismiss all charges, arguing that his speedy trial rights under the Sixth Amendment to United States Constitution and R.C. § 2945.71 had been violated. (ECF No. 10-2, Exhibit 33). On October 3, 2017, Mr. Williams, through new counsel, filed another motion to dismiss all charges, again alleging that his speedy trial rights had been violated. (ECF No. 10-2, Exhibit 35). On October 11, 2017, the trial court held that Mr. Williams' speedy trial rights had not been violated because his speedy trial time had been tolled by various events during the pendency of the proceedings. (ECF No. 10-2, Exhibit 37). On October 20, 2017, Mr. Williams, acting *pro se*, filed a notice of appeal from the trial court's denial of his motion to dismiss. (ECF No. 10-2, Exhibit 38). On November 7, 2017, the trial court dismissed Mr. Williams' appeal *sua sponte* for failure to file a praecipe in

accordance with the local rules. (ECF No. 10-2, Exhibit 39).

On November 1, 2017, the State filed a motion to join the indictments against Mr. Williams, arguing that joinder was appropriate because the alleged offenses were of the same character and constituted a common course of criminal conduct. (ECF No. 10-2, Exhibit 40). On November 21, 2017, the trial court granted the State's motion. (ECF No. 10-2, Exhibit 41).

On November 15, 2017, Mr. Williams, through counsel, filed a motion to suppress certain statements the police allegedly obtained from him in violation of his Fifth Amendment rights. (ECF No. 10-2, Exhibit 42). On December 5, 2017, the trial court denied Mr. Williams' motion to suppress, holding that Mr. Williams voluntarily waived his Fifth Amendment rights. (ECF No. 10-2, Exhibit 44).

The case proceeded to trial on December 13, 2017. The trial was presided over by a different judge than the judge who originally sentenced Mr. Williams following his guilty plea. During the trial, Mr. Williams fled, as the Eighth Appellate District summarized:

> {¶30} Williams was out on bond for the few months leading up to his December 2017 trial. As a condition of his bond, Williams was on home detention and wore an ankle monitor. In between the first and second day of witness testimony, Williams cut off his ankle monitor. He did not appear for the remainder of his trial.
>
> {¶31} Alonda Garth, a probation officer in the pretrial GPS electronic monitoring unit, testified that Williams cut off his ankle monitor on December 15, 2017, and his whereabouts were unknown. Cuyahoga County Sheriff's Deputy Anthony McGowan ("Deputy McGowan") testified that he received an alert on December 15, 2017, that Williams had tampered with his ankle monitor. Deputy McGowan attempted to locate Williams but was unable to find him. The deputy recovered the cut ankle monitor strap inside of a tire in a Cleveland field.
>
> {¶32} The trial continued in Williams's absence.

(ECF No. 10-2, Exhibit 60).

On December 20, 2017, Mr. Williams was convicted of all counts in all four cases,

except that the jury acquitted Mr. Williams on Count One in case number CR-15-593844 (aggravated robbery) and Count Two in CR-15-594806 (drug possession). (ECF No, 10-2, Exhibits 45-48). It was noted that Mr. Williams was not in court for the verdict because he had removed his GPS device and fled the jurisdiction. (ECF No. 10-2, Exhibit 49).

Mr. Williams was subsequently located in Nebraska and extradited to Ohio. On July 31, 2018, the trial court ordered that Mr. Williams was to be gagged by the use of duct tape due to multiple outbursts in the courtroom. (ECF No. 10-2, Exhibit 50). On September 20, 2018, the trial court ordered Mr. Williams to undergo an inpatient competency evaluation after he refused to cooperate with a competency evaluation at the court psychiatric clinic. (ECF No. 10-2. Exhibit 51).

On October 1, 2018, Mr. Williams, acting *pro se*, filed a motion for a new trial. (ECF No. 10-2, Exhibit 52). Mr. Williams also apparently filed a number of other motions, including a motion to withdraw his guilty plea, although those motions do not appear in the record. (ECF No. 10-2, Exhibit 54). On February 26, 2019, the trial court denied Mr. Williams' motion for a new trial along with his other motions. (ECF No. 10-2, Exhibit 54).

On February 26, 2019, the trial court sentenced Mr. Williams to a total of 33 years for all four indictments. (ECF No. 10-2, Exhibit 55). A visiting judge—who had not presided over Mr. Williams' retrial and who had not imposed his original sentence following his guilty plea—served as the sentencing judge. On May 18, 2020, the trial court entered an order correcting Mr. Williams' sentence *nunc pro tunc* to correct certain typographical errors. (ECF No. 10-2, Exhibit 68).

### D.  **Direct Appeal**

On March 7, 2019, Mr. Williams, acting *pro se*, filed a timely notice of appeal to the Eighth Appellate District. (ECF No. 10-2, Exhibit 56). On July 31, 2019, Mr. Williams,

through counsel, filed his appellate brief, raising the following assignments of error:

1. The trial court erred in failing to dismiss the case for failure to bring Defendant to trial within the statutory or constitutional speedy trial time.

2. Defendant's sentence was vindictive in violation of law.

3. The trial court erred in failing to grant the Crim. R. 29 motion for acquittal.

4. The jury verdict was against the sufficiency of the evidence.

5. The court erred in granting the joinder for trial and allowing prior acts.

6. The verdict was against the manifest weight of the evidence.

(ECF No. 10-2, Exhibit 57). On January 30, 2020, the Eighth Appellate District affirmed Mr. Williams' conviction and sentence. (ECF No. 10-2, Exhibit 60).

### E. **Ohio Supreme Court**

On March 12. 2020, Mr. Williams, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 10-2, Exhibit 61). In his memorandum in support of jurisdiction, Mr. Williams raised the following propositions of law:

1. Upon a prima facie demonstration by the Defendant, the burden then shifts to the state to demonstrate that sufficient times was tolled pursuant to R.C. 2945.72. Pursuant to R.C. 2945.71(c)(2) a person against whom a charge of felony is pending . . . shall be brought to trial within two hundred & seventy days of his arrest. (State v. Palmer) 2007-Ohio-374. Palmer holds a defendants neglect of timely compliance with discovery is a matter for the trial court to determine & if it so finds neglect it is also a matter for the trial court to determine the amount of time tolled by that neglect. The trial court never found neglect of the matter in this case.

2. A sentence that is vindictively imposed on a defendant because he or she exercised a constitutional right is contrary to law. Pursuant to (State v. Rahab) 105 Ohio St. 3d 152, 2017-Ohio-1401, 80 N.E. 3d 431, 48) (North Carolina v. Pearce) 1969 395 U.S. 711.) The Supreme Court ruled that in order to insure that an increase in sentence is not vindictive the lower court must meet two requirements. The lower court did not meet those requirements in this case.

3. Criminal Rule 29, under the rule, judgment must be granted if insufficient evidence is presented (State v. Bridgman) 1978 55 Ohio St. 2d 261.) A denial of the motion is error unless reasonable mind can reach different conclusions as to

whether each & every element of a crime has been proven beyond a reasonable doubt.

(ECF No. 10-2, Exhibit 64). On July 7, 2020, the Ohio Supreme Court declined to accept jurisdiction over Mr. Williams' appeal. (ECF No. 10-2, Exhibit 65).

### F.  **Federal Habeas Action**

On July 6, 2021, Mr. Williams, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Williams' habeas petition raises the following grounds for relief:

1. The trial court erred in failing to dismiss this case for failure to bring Defendant to trial within the statutory speedy trial time pursuant to O.R.C. 2945.71(c)(2) as well as the constitutional speedy trial time.

2. Defendant['s] sentence was vindictive in violation of law.

3. The trial court and the 8th Appellate District erred in failing to grant the Crim.R.29 motion for acquittal (Confrontational Clause Crawford).

*Id*. at PageID # 5-8.

The Department filed an answer/return of writ on February 17, 2022. (ECF No. 10). Mr. Williams, now represented by counsel, filed a traverse on August 30, 2022. (ECF No. 16).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A.  **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Williams, and the Court takes

judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Williams's § 2254 petition.

**B.** **Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir.

2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. <u>Cognizable Federal Claim</u>

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead,

"federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. <u>Whether the Department is a Proper Respondent</u>

Before turning to the merits of Mr. Williams' petition, there is a procedural issue that neither party has raised. 28 U.S.C. § 2242 provides that a habeas petitioner must allege in the petition "the name of the person who has custody over him . . . ." Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts similarly provides that "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."

Mr. Williams has not complied with that requirement. Instead, he named the Department as a defendant, rather than the warden of the facility where he is incarcerated or another state officer having custody over him. That is improper. *See Williams v. Missouri Dept. of Corr.*, 463 F.2d 993, 996 (8th Cir. 1972) ("we *sua sponte* observe that the petitioner in naming the Missouri Department of Corrections as the respondent has not met the explicit command of 28 U.S.C.A. § 2242 that an application for a writ give 'the name of the person

who has custody over him. . . .'"); *Schaeffer v. Dept' of Corr.*, No. 5:07CV-P21-R, 2007 WL 1805534, at *1 (W.D. Ky. June 21, 2007) (noting that petitioner should have named as a defendant the warden of the prison where has currently incarcerated rather than the Department of Corrections). It is conceivable that dismissal could be appropriate on this basis. However, the Department has not raised this issue and this case has been pending for some time. Accordingly, I will proceed to consider the merits of Mr. Williams' petition.

### B. <u>Ground One: Violation of Speedy Trial Rights</u>

In Ground One, Mr. Williams argues that his conviction was obtained in violation of his right to a speedy trial under Ohio law and the Sixth Amendment to the United States Constitution. The Department concedes that Mr. Williams properly preserved this claim, but argues that his claim fails on the merits.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017).

In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right. *Id.* at 523. Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred. *Id.* at 530. The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.*; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992). "[N]one of the four factors [is] either

a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."
*Barker*, 407 U.S. at 533. Instead, "they are related factors and must be considered together
with such other circumstances as may be relevant." *Id*. Moreover, "even if all four *Barker*
factors are satisfied, a court is not required to conclude that a defendant's speedy trial right
has been violated." *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019).

The Eighth Appellate District addressed Mr. Williams' speedy trial claim on the
merits, holding that the two-year delay between indictment and trial did not violate his speedy
trial rights because Mr. Williams himself caused much of the delay and because Mr. Williams
had not demonstrated that the delay prejudiced him:

> {¶44} A criminal defendant has a right to a speedy trial under the Ohio Revised Code
> (statutory speedy trial rights), and the Ohio Constitution and the Fifth and Sixth
> Amendments to the United States Constitution (constitutional speedy trial rights).

> {¶45} The Ohio Revised Code requires that a person against whom a felony charge is
> pending shall be brought to trial within 270 days after the person's arrest. R.C.
> 2945.71(C)(2). Speedy-trial provisions are mandatory and courts must strictly enforce
> them. *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 15.
> The trial court must discharge the defendant upon a timely motion if the defendant is
> not brought to trial in the allotted time. R.C. 2945.73(B).

> {¶46} There are exceptions, however. In *State v. Hull*, 110 Ohio St.3d 183, 2006-
> Ohio-4252, 852 N.E.2d 706, the Ohio Supreme Court held:

>> R.C. 2945.71 does not apply to criminal convictions that have been overturned
>> on appeal. The time limit for bringing a person charged with a crime to trial
>> whose conviction has been overturned on appeal is governed by the Sixth
>> Amendment to the United States Constitution and Section 10, Article I of the
>> Ohio Constitution.

> *Id*. at ¶ 26.

> {¶47} Pursuant to Hull, R.C. 2945.71 does not apply to this case because Williams's
> convictions were overturned on appeal. Thus, our concern herein is whether the court
> violated Williams's constitutional right to a speedy trial.

> {¶48} To determine whether a defendant has been deprived of his or her constitutional
> speedy trial rights, a court must balance four factors: (1) the length of the delay, (2)
> the reason for the delay, (3) the defendant's timely assertion of his or her rights, and

(4) and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶49} Before a court engages in a balancing test under *Barker*, the court must make a threshold determination concerning the length of delay. " 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *Hull* at ¶ 23, quoting *Barker* at *id*. Thus, length of delay serves as a triggering mechanism for the rest of the *Barker* analysis. *Barker* at *id*.

{¶50} A delay becomes presumptively prejudicial as it approaches one year in length. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1. The crux of Williams's constitutional argument is that the length of delay in his case was over two years between his initial arrest and the filing of his motion to dismiss. But a review of the lengthy record in this case shows that the second factor, the reason for the delay in this case, weighs heavily in favor for the state. Almost all of the continuances in the case have been at Williams's request or as a result of Williams's actions, including: ongoing discovery; numerous motions for new attorneys; appointment of new counsel; motions for the court to recuse itself; the first trial judge recusing herself at Williams's request; defense motions including motions to suppress, motions to dismiss, and motions to modify bond conditions; and countless pro se filings.

{¶51} Williams was represented by at least seven different attorneys during the pendency of these proceedings and has filed multiple appeals, including two pro se appeals. Although Williams claims he asserted his speedy trial rights early, he did not file his first motion until August 2017 (he filed a second motion in October 2017). Moreover, two different trial courts gave Williams full and impartial hearings on his motions.

{¶52} Finally, with regard to the fourth factor, we find no prejudice. The delay of the proceedings was primarily caused by Williams's own actions. Thus, we find no constitutional violation of Williams's speedy trial rights.

{¶53} Accordingly, the first assignment of error is overruled.

(ECF No. 10-2, Exhibit 60).

Because AEDPA deference applies to a state appellate court's speedy trial analysis on

federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the

facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Brown v. Bobby*, 656 F.3d 325, 332-33 (6th Cir. 2011).

Here, the Eighth Appellate District did not unreasonably apply the Supreme Court's speedy trial precedent in determining that Mr. Williams' speedy trial rights had not been violated. As an initial matter, to the extent Mr. Williams argues that his statutory right to a speedy trial under Ohio law was violated, that claim is not cognizable on federal habeas review because it is a question of state law. *See Phillips v. Schweitzer*, No. 3:18-cv-02556, 2020 WL 9889893, at *9 (N.D. Ohio Nov. 10, 2020), *report and recommendation adopted*, 2021 WL 2101820 (N.D. Ohio May 24, 2021) ("nor does an alleged violation of Ohio's speedy trial statute present a cognizable federal habeas claim"); *Smith v. Warden, Pickaway Corr. Inst.*, No. 1:18-cv-335, 2019 WL 2774258, at *4 (S.D. Ohio July 2, 2019), *report and recommendation adopted*, 2020 WL 1042449 (S.D. Ohio Mar. 4, 2020) ("because the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy-trial statute or state case law interpreting the Ohio statute").

Mr. Williams' argument that his speedy trial rights under the United States Constitution were violated is cognizable. I will therefore analyze the *Barker* factors as applied to Mr. Williams' claim while giving AEDPA deference to the Eighth Appellate District's adjudication of the issue.

The first *Barker* factor, the length of the delay, "can generally be considered a

24

triggering mechanism." *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir. 1998). A court's "first inquiry" is therefore "whether there was a presumptively prejudicial delay to warrant further investigation of the *Barker* factors." *Id*. at 326-27. "The Supreme Court [has] noted that, in general, a delay that approaches one year is considered presumptively prejudicial, depending on the nature and seriousness of the charges." *Id*. at 327 (citing *Doggett*, 505 U.S. at 652 n.1). The Eighth Appellate District appears to have accepted Mr. Williams' argument that there was a two-year delay in this case, and the Department concedes that the delay exceeded one year. Accordingly, I will proceed to evaluate the remaining factors.

"The second *Barker* factor looks at 'whether the government or the criminal defendant is more to blame for th[e] delay.'" *Miles v. Jordan*, 988 F.3d 916, 925 (6th Cir. 2021) (quoting *Barker*, 407 U.S. at 651). "The Supreme Court has explained that different reasons for delay should be given different weights with deliberate delays weighed more heavily and valid delays less heavily." *Bobby*, 656 F.3d at 333. "The underlying purpose of analyzing the reasons for the delay is determining which party is more to blame for the delay." *Id*.

The Eighth Appellate District held here that this factor "weigh[ed] heavily in favor of the state" because "[a]lmost all of the continuances in the case have been at Williams's request or as a result of Williams's actions" (ECF No. 10-2, Exhibit 60, ¶ 50). In particular, the Eighth Appellate District noted that, in addition to ongoing discovery, the case involved "numerous motions for new attorneys; appointment of new counsel; motions for the court to recuse itself; the first trial judge recusing herself at Williams's request; defense motions including motions to suppress, motions to dismiss, and motions to modify bond conditions; and countless pro se filings." *Id*.

Mr. Williams argues that the delay was caused in large part by the State's failure to

provide discovery. However, he does not dispute that he filed numerous motions during the course of the proceedings, went through several different attorneys, and attempted to take multiple appeals. Thus, applying AEDPA deference, the Eighth Appellate District did not err in concluding that this factor weighed heavily against Mr. Williams.

The third *Barker* factor "relates to 'the defendant's responsibility to assert his right,' and its effect will depend on the other factors." *Miles*, 988 F.3d at 925 (quoting *Barker*, 407 U.S. at 531). "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 925. Here, the Eighth Appellate District noted that, despite being indicted in March and April 2015, Mr. Williams "did not file his first motion until August 2017 (he filed a second motion in October 2017)." (ECF No. 10-2, Exhibit 60, ¶ 51). Thus, while Mr. Williams did assert his right to a speedy trial, the Eighth Appellate District did not err in concluding that this factor did not weigh in favor of Mr. Williams.

Finally, the fourth factor is the prejudice to the defendant from the delay. "A defendant must show that 'substantial prejudice' has resulted from the delay." *Rice*, 786 F. App'x at 37 (quoting *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003)). The Eighth Appellate District did not err in determining that Mr. Williams failed to demonstrate prejudice because the delay was largely the result of his own actions. That holding was again consistent with applicable law, as a defendant "is not entitled to a presumption of prejudice" where the delay is the result of the defendant's own actions. *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001).

26

Mr. Williams can also demonstrate actual prejudice even where a presumption of prejudice does not apply. *See Maples v. Stegall*, 427 F.3d 1020, 1031 (6th Cir. 2005). "The Supreme Court has identified three defense interests a court should consider when determining actual prejudice in speedy trial cases: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; (3) the possibility that the defense will be impaired." *Id*. (citing *Barker*, 407 U.S. at 532). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Here, Mr. Williams does not identify how the delay in bringing him to trial impaired his ability to prepare a defense and has not otherwise established that the delay caused him meaningful actual prejudice. Accordingly, the Eighth Appellate District did not err in holding that this factor weighed against Mr. Williams.

In sum, the Eighth Appellate District did not unreasonably apply the *Barker* factors in rejecting Mr. Williams' speedy trial claim, and I recommend that the Court deny Mr. Williams' first ground for relief.

### C.  Ground Two: Vindictive Sentencing

In Ground Two, Mr. Williams argues that the trial court violated his due process rights under the Fourteenth Amendment by imposing a sentence on remand that was more than twice as long as the sentence he received with his original guilty plea (33 years versus 14 years) as punishment for successfully challenging his original sentence on appeal. The Department concedes that Mr. Williams properly preserved this claim, so I will address it on the merits.

"[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). In *North Carolina v. Pearce*, 395 U.S.

27

711 (1969), the Supreme Court stated that it "can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *Id*. at 723-24.

In *Pearce*, the defendant obtained reversal of his conviction through state post-conviction proceedings. *Id*. at 713. The state retried the defendant, who was convicted again and sentenced to a longer term than he had originally received. *Id*. The Court held that imposition of a longer sentence following retrial violated the defendant's due process rights under the Fourteenth Amendment. The Court stated that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id*. at 725. Moreover, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id*. Accordingly, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id*. at 726. If a case falls within the *Pearce* rule, the Supreme Court has recognized "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374.

However, "[w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, [the Court's] subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher

28

sentence on retrial.'" *Alabama v. Smith*, 490 U.S. 794, 798 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)). "Because the *Pearce* presumption 'may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct,' [the Court has] limited its application, like that of other judicially created means of effectuating the rights secured by the [Constitution], to circumstances where its 'objectives are thought most efficaciously served.'" *Smith*, 490 U.S. at 799 (internal citations omitted) (quoting *Goodwin*, 457 U.S. at 373, *McCullough*, 475 U.S. at 138). As a result, the Court "has been chary about extending the *Pearce* presumption of vindictiveness when the likelihood of vindictiveness is not as pronounced . . . ." *Wasman v. United States*, 468 U.S. 559, 566 (1984).

Here, as the Eighth Appellate District correctly held (ECF No. 10-2, Exhibit 60, ¶ 61), Mr. Williams is not entitled to a presumption of vindictiveness for two separate reasons. First, Mr. Williams' sentence was imposed by a different judge than the judge who originally sentenced him following entry of his guilty plea (and, in fact, by a different judge than the judge who presided over the retrial). "Generally, the presumption of vindictiveness does not apply when the second sentencing authority is a different entity than the original sentencing authority." *Vanover v. Warden, Lebanon Corr. Inst.*, 502 F. App'x 548, 551 (6th Cir. 2012) (citing *McCullough*, 475 U.S. at 140); *see also United States v. McFalls*, 675 F.3d 599, 607 (6th Cir. 2012) ("a sentencing judge uninvolved in an earlier sentence lacks a personal stake in the outcome of later proceedings and thus would have little motive to act vindictively").

Second, the Supreme Court held in *Smith* that the presumption of vindictiveness does not apply where, as here, a greater penalty is imposed after trial than was previously imposed under a guilty plea. 490 U.S. at 801. As the Court stated, "when a greater penalty is imposed

after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." *Id*. The Court further stated that, "[e]ven when the same judge imposes both sentences"—which is not the case here—"the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." *Id*. Mr. Williams is therefore not entitled to a presumption of vindictiveness.

Even though no presumption of vindictiveness applies, Mr. Williams can still prevail on his due process claim if he demonstrates "actual vindictiveness." *Id*. "The defendant has an affirmative burden to prove actual vindictiveness, and any evidence of it should be addressed on a case-by-case basis." *Vanover*, 502 F. App'x at 552. Mr. Williams has not satisfied that burden here. He has not pointed to any statements from the sentencing judge or any other objective evidence indicating that the judge had a vindictive motive. I have also reviewed the sentencing journal entry and the transcript of Mr. Williams' sentencing hearing (ECF No. 10-9) and have not found any evidence of vindictiveness.

Mr. Williams argues that the trial court did not provide any reason for the increase in his sentence. As the Eighth Appellate District held, however, the sentencing court "issued a comprehensive journal entry outlining the sentence. In the journal entry, the court stated that it had reviewed the 1057 page transcript, verdict forms, all relevant journal entries, sentencing memorandums, and pertinent case law." (ECF No. 10-2, Exhibit 60, ¶ 62; *see also* ECF No. 10-2, Exhibit 10-2, Exhibit 55). The sentencing court also "expressly considered Williams's history of criminal convictions, failure to follow rules in prison, lack of remorse for current crimes, the fact he was on postrelease control at the time he committed his current offenses, he committed the current offenses as part of a pattern of criminal activity, and he caused

psychological harm to his victims." (ECF No. 10-2, Exhibit 60, ¶ 63).

The Eighth Appellate District did not act contrary to, or unreasonably apply, clearly established Supreme Court precedent in holding that Mr. Williams' sentence was not the product of judicial vindictiveness. I therefore recommend that the Court deny Mr. Williams' second ground for relief.

### D.  Ground Three: Sufficiency of the Evidence/Confrontation Clause

In Ground Three, Mr. Williams alleges that the trial court erred in failing to grant his motion for acquittal under Ohio Crim. R. 29, which provides that the court shall order judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Ohio Crim. R. 29(A).

Before addressing Mr. Williams' third ground for relief, I must clarify its scope. In his habeas petition, Mr. Williams argued that the trial court should have granted him judgment of acquittal in case number CR-15-593998 because the alleged victim, Mr. Watkins, did not testify, and because the trial court permitted the introduction of a 911 tape in violation of his right to confront his accuser under the Confrontation Clause of the Sixth Amendment. (ECF No. 1, PageID # 8). Mr. Williams attempted to broaden the scope of his claim in his traverse, arguing that the evidence was generally insufficient to convict him of the Watkins robbery. Mr. Williams also argued in his traverse that that his constitutional and due process rights were violated because the trial court improperly permitted joinder of the four cases against him.

"[I]t is well established that claims raised for the first time in a traverse are not properly before a district court." *Royster v. Warden, Chillicothe Corr. Inst.*, No. 18-3362, 2018 WL 8138770, at *2 (6th Cir. Aug. 23, 2018); *see also Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented

in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."). Accordingly, I will address only Mr. Williams' argument that his rights under the Confrontation Clause were violated because Mr. Watkins did not testify and because the trial court nonetheless permitted introduction of the 911 tape. The Department responds that Mr. Williams procedurally defaulted on this argument by failing to raise it before the Eighth Appellate District. The Department does not address Mr. Williams' Confrontation Clause argument on the merits.

### 1. Procedural Default

As noted above, a petitioner procedurally defaults on a habeas claim unless the petitioner raises the claim as a federal constitutional question at every step of the state review process while state review mechanisms are still available to him. *Williams*, 460 F.3d at 806. The Department argues that, to the extent Mr. Williams is asserting a Confrontation Clause claim in his third ground for relief, he procedurally defaulted on that claim because he did not raise a Confrontation Clause argument before the Eighth Appellate District. I agree. While Mr. Williams did raise a Crim.R. 29 argument before the Eighth Appellate District, he did not argue that the Confrontation Clause had been violated. Instead, he argued generally that the evidence was insufficient to convict him in any of the four cases.

While Mr. Williams did not raise a Confrontation Clause issue to the Eighth Appellate District, he arguably did so in his petition for leave to appeal to the Ohio Supreme Court. (ECF No. 10-2, Exhibit 64). However, "[t]he Ohio Supreme Court's refusal to consider criminal constitutional questions raised for the first time in the Ohio Supreme Court is an established rule of long standing." *Coats v. Sheldon*, No. 3:11 CV 1017, 2012 WL 7037778, at *9 (N.D. Ohio Aug. 20, 2012), *report and recommendation adopted*, 2013 WL 474721 (N.D. Ohio Feb. 7, 2013) (quotation omitted). Thus, "[i]n Ohio, exhaustion cannot occur

where the appellant raised a claim for the first time in the Ohio Supreme Court without having first presented it to the lower appellate court." *Hayes v. Gray*, No. 5:17-CV-2035, 2019 WL 6134567, at *9 (N.D. Ohio Oct. 22, 2019), *report and recommendation adopted*, 2019 WL 6134059 (N.D. Ohio Nov. 19, 2019). Mr. Williams therefore failed to exhaust his Confrontation Clause claim. And, because the time for Mr. Williams to raise a Confrontation Clause argument to the Eighth Appellate District has long since expired, Mr. Williams has procedurally defaulted on the claim as well.

Mr. Williams' procedural default can nonetheless be excused if he demonstrates either (1) cause for the default and resulting prejudice; or (2) that failure to consider the claim will result on a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. However, Mr. Williams does not make any argument that he has satisfied either standard. I therefore recommend that the Court dismiss Mr. Williams' third ground for relief because it is procedurally defaulted.

### 2.  *Merits*

Alternatively, I recommend that the Court deny Mr. Williams' Confrontation Clause claim on the merits. Because Mr. Williams did not raise a Confrontation Clause argument before the Eighth Appellate District, the Ohio courts did not address the claim on the merits, and I will therefore review it *de novo*. *See Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (holding that a federal court reviews a claim *de novo* if the claim was not adjudicated on the merits in state court).

The Confrontation Clause of the Sixth Amendment provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation

Clause also applies both to in-court testimony and to out-of-court statements introduced at trial. *Id*. at 50-51.

In *Crawford*, the Supreme Court held that the Confrontation Clause applies only to statements that are "testimonial," meaning statements that involve "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). If hearsay evidence is testimonial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id*. at 68. Thus, after *Crawford*, "[t]he Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness when those statements are offered to prove the truth of the matter asserted and when the defendant did not have a previous opportunity to cross-examine the witness." *Berry v. Capello*, 576 F. App'x 579, 585 (6th Cir. 2014) (citing *Crawford*, 541 U.S. at 53-54).

Mr. Williams argues that his rights under the Confrontation Clause were violated when the trial court permitted the prosecution to play Mr. Watkins' call to 911 even though Mr. Watkins did not appear to testify at trial. In *Davis v. Washington*, 547 U.S. 813 (2006), however, the Supreme Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at 822. As the Court held, "[a] 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is not ordinarily designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id*. at 827 (holding that 911 call was nontestimonial when call was made during ongoing emergency);

34

*see also United States v. Common*, 563 F. App'x 429, 434 (6th Cir. 2014) (holding that playing of 911 tape did not violate confrontation clause because "[t]he statements made during the 911 call were not testimonial in nature because they were made to assist the police in responding to a dangerous situation, namely a man in possession of a gun, while the caller faced an ongoing emergency"); *United States v. Arnold*, 486 F.3d 177, 189 (6th Cir. 2007) (en banc) (holding that statements to 911 were nontestimonial when made while caller "sought protection from an ongoing emergency"); *Banks v. Wolfe*, No. 2:05-cv-00697, 2006 WL 2265512, at *4 (S.D. Ohio Aug. 7, 2006) ("The United States Court of Appeals for the Sixth Circuit and other courts to consider the issue likewise have concluded that similar such statements made to a 911 operator do not constitute 'testimonial' statements . . . and therefore are not constitutionally prohibited under the Confrontation Clause.").[1] Thus, the trial court did not violate Mr. Williams' rights under the Confrontation Clause, and I alternatively recommend that the Court deny Mr. Williams' third ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a

---

[1] The Department also argues that the evidence at trial was sufficient to convict Mr. Williams of the Watkins robbery under *Jackson v. Virginia*, 443 U.S. 307 (1979). While Mr. Williams made a general sufficiency of the evidence argument before the Eighth Appellate District, he did not do so in these proceedings until his traverse. Accordingly, I need not address any sufficiency of the evidence argument with respect to the Watkins robbery other than Mr. Williams' Confrontation Clause argument.

denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Mr. Williams has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the DISMISS and/or DENY Mr.

Williams's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend

that the Court not grant him a certificate of appealability.

Dated:  March 12, 2024                    *s/Jennifer Dowdell Armstrong*
                                          Jennifer Dowdell Armstrong
                                          U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or

waiver of the right to raise the issue on appeal either to the district judge or in a subsequent

appeal to the United States Court of Appeals, depending on how or whether the party responds

to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).

Objections must be specific and not merely indicate a general objection to the entirety of the

report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).